# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**HAZEL W. TUCKER, JR.,**

        **Plaintiff,**

v.                                                       **Case No. 05-C-1173**

**DAVE FOX, MIKE KIRCHNER,
GERARD DAVID, and
WARREN INDUSTRIES, INC.,**

        **Defendants.**

---

## DECISION AND ORDER

---

The plaintiff, Hazel Tucker, filed this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e – 2000e17 ("Title VII"), and 42 U.S.C. § 1981(a) and (b). He alleged that the defendants, Dave Fox ("Fox"), Mike Kirchner ("Kirchner"), Gerard David ("David"), and Warren Industries, Inc. ("Warren Industries"), suspended and dismissed him from his job because of his race. The defendants filed a motion for summary judgment, which is now pending before the Court.

### BACKGROUND

Except where otherwise noted, the following facts are undisputed.[1] Warren Industries is a contract packaging company that packs and assembles products. Fox, Kirchner, and

---

[1] Tucker did not dispute any of the defendants' findings of fact, except for paragraphs 166 and 171.

1

David are all employed by Warren Industries in management positions. Fox is the Director of Human Resources, Kirchner is the Operations Manager, and David was the Plant Manager. David also supervised the Tri-C Division, which did specialty packaging of card games. Fox, Kirchner, and David were involved in the suspension and termination of Tucker.

Tucker is an African-American who was employed by Warren Industries from February 5, 1990, until his employment was terminated on March 1, 2004. Starting in 1993, Tucker served as the lead cutter. Cutters typically took sheet goods, placed them in the bed of the cutter, and cut the goods to specified sizes. As a lead cutter, Tucker's duties entailed reading the specific job instructions, communicating those instructions to the other cutters, and quality checking the products after the cutting process. Tucker primarily worked in the Tri-C Division on the second shift.

On March 17, 2003, Kevin Krifka, who was one of the product shift supervisors at the Tri-C Division, disciplined Tucker because Tucker allowed 2400 decks of cards to be cut incorrectly. The mistake was deemed a major offense. Less than a year later, on February 24, 2004, Tucker was again disciplined because he and other cutters ran a job backwards for two days. Tucker, and all the other employees responsible for the infraction, received a three-day suspension. The other employees who received the suspension were Mary Hawkins, a white female; Arturo Cortez, a Hispanic male; Chester Cotton, a black male; and Joe Puentez, a Hispanic male. Tucker's infraction was again deemed a major offense.

2

According to Warren Industries' Performance Improvement Policy, a second major offense that occurs within the same 12-month period normally results in discharge. Nevertheless, despite that policy, Warren Industries did not terminate Tucker at that time, deciding instead to suspend him for three days and allowing him to return to work.

When Tucker returned to work on February 27, 2004, events transpired that eventually led to his termination. Krifka and Curtis Winston, who also was a shift supervisor at the Tri-C Division, met in the afternoon of February 27, 2004, to draft written instructions for a job that needed particular attention due to special cutting requirements and quality standards. After their meeting, Krifka gave the instructions to Tucker. A short time later, Krifka approached Tucker to inquire whether Tucker had read and understood the instructions. Tucker did not respond to Krifka's question, but rather just pushed the instructions off to the side. Krifka took the same set of instructions and moved them in front of Tucker again. Krifka asked a second time if he had read the instructions and understood them. Tucker did not give a verbal response, but again just pushed the instructions to the side.

Winston observed that Tucker did not respond to Krifka's inquiries, and then saw that Tucker was not cutting according to the special instructions. Winston decided things were getting out of hand, and decided to contact Fox and Kirchner to handle the matter. When Fox and Kirchner arrived at the Tri-C Building, Winston told them what had happened. Fox and Kirchner then asked Tucker to meet with them to discuss what had occurred. According to Fox, Kirchner, and Winston, every time they asked Tucker if he had read the instructions,

3

Tucker did not respond. However, Tucker claims that, at this meeting, he did respond and told them that he had read the instructions.

At the end of the meeting, exacerbated that Tucker never responded to his questions, Fox said he had no choice but to suspend Tucker. Fox told Tucker he would be suspended until further review could take place. After considering the matter over the weekend, Fox and Kirchner decided to terminate Tucker. On March 1, 2004, Fox called Tucker and told him he was terminated as an employee of Warren Industries. Dandrius Robinson, who is African-American, was promoted to replace Tucker as the lead cutter.

## STANDARD OF REVIEW

A court will grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A "material fact" is one which, under the relevant substantive law, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact exists if a reasonable juror could find that the evidence supports a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. When considering the movant's case, the Court should take all inferences in the light most favorable to the nonmoving party.

4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Hall v. Bennett*, 379 F.3d 462, 465 (7th Cir. 2004).  If the movant meets his burden (by showing an absence of a genuine issue of material fact), the nonmovant may not rest on the pleadings. Instead, the nonmovant must come forward with evidence that there is a genuine issue for trial that would support a reasonable jury verdict on every issue for which he bears the burden of proof at trial.  Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *Celotex Corp.*, 477 U.S. at 322-24. If the nonmoving party bears the burden of proof on a matter at trial, and he is unable "to establish the existence of an element essential to [his] case," summary judgment is appropriate.  *Celotex*, 477 U.S. at 322-23.

## DISCUSSION

It is well-settled that a defendant who is not an employer cannot be held liable for a violation of Title VII.  *See Gastineau v. Fleet Mortgage Corp.*, 137 F.3d 490, 493-94 (7th Cir. 1998).  Warren Industries was Tucker's only employer, not Fox, Kirchner, or David. Accordingly, the Court must dismiss the claims against Fox, Kirchner, and David.

The only claims that remain, therefore, are the Title VII and § 1981 claims asserted against Warren Industries.  Discrimination claims pursuant to Title VII and § 1981 are analyzed in the same manner.  *See Patton v. Indianapolis Public School Bd.*, 276 F.3d 334, 338 (7th Cir. 2002).

Because Tucker does not have any direct evidence of discrimination, he must use the familiar burden-shifting method established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a *prima facie* case under this framework, Tucker must prove: (1) he belongs to a protected class; (2) he was performing according to his employer's legitimate expectations; (3) he experienced an adverse employment action; and (4) similarly situated individuals not in the protected class were treated more favorably. *See Scaife v. Cook County*, 446 F.3d 735, 739 (7th Cir. 2006). Tucker failed to satisfy the second element.

The second element of the *prima facie* case requires that the plaintiff show that he was performing according to this employer's legitimate expectations. The Court must keep in mind that "[e]mployers, not employees or courts, are entitled to define the core qualifications for a position, so long as the criteria utilized by the company are of a nondiscriminatory nature." *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1064 (7th Cir. 2003). In the instant action, it is apparent that one of the core qualifications of a lead cutter at Warren Industries is to scrupulously follow the instructions and to make sure that other cutters understand and follow those same instructions. Yet, on three occasions, Tucker failed in that regard. First, on March 17, 2003, Tucker cut 2400 decks of cards incorrectly, which was deemed a major offense. Less than a year later, on February 24, 2004, Tucker and other cutters ran a job backwards for two days. As a result, Tucker and the other cutters were suspended for three days, and this, too, was deemed a major offense. While Warren Industries' Performance Improvement Policy provided that someone who commits two major offenses within any 12-

month period can be discharged, Warren Industries decided not to discharge Tucker, instead allowing him to return to work. Yet, the day Tucker returned to work after his suspension, he refused to read the job instructions and would not answer any of his supervisors' questions regarding those instructions. Tucker's insubordination, combined with his previous infractions, evince that he was not performing according to his employer's legitimate expectations. Accordingly, Tucker failed to satisfy the second element of the *prima facie* case.

Even if Tucker could satisfy the elements of his *prima facie* case, he cannot demonstrate that the proffered, non-discriminatory reasons offered by Warren Industries for firing Tucker is a pretext for discrimination. Tucker argues that Warren Industries changed its reason for terminating him, which, if true, may be evidence of pretext. *See Perfetti v. First Nat'l Bank of Chicago*, 950 F.3d 449, 456 (7th Cir. 1991). Yet, Tucker provides virtually no evidentiary support for his argument.

Tucker alleges that Warren Industries changed its reason for terminating him because Winston testified at the Equal Rights Division Hearing that failure to follow procedures was a minor infraction, but later, at a deposition, said that failure to comply with procedures was a major offense. The Court fails to see how this evidence demonstrates that Warren Industries changed its reason for terminating Tucker. Warren Industries' reason for firing Tucker has always been the same, which is that Tucker committed three infractions, including a final infraction on February 27, 2004, that was an act of insubordination. There

7

is simply no evidence to show that Warren Industries has ever proffered another reason besides these infractions. Accordingly, Tucker's allegation that Warren Industries changed its reason for terminating him is completely unfounded.

Furthermore, Warren Industries promoted Dandrius Robinson, who is also African-American, to replace Tucker as lead cutter. It is difficult to discern how Warren Industries' proffered, non-discriminatory reason is a pretext for racial discrimination when Warren Industries replaced Tucker with a person of the same race.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

The Defendants' Motion for Summary Judgment (Docket No. 10) is **GRANTED**.

The clerk is directed to enter judgment and close this case accordingly.

Dated at Milwaukee, Wisconsin, this 29th day of December, 2006.

**BY THE COURT:**

**s/Rudolph T. Randa**
**HON. RUDOLPH T. RANDA**
**Chief Judge**